UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEPHEN DURR**, <br><br> Plaintiff, <br><br> v. <br> **UNITED STATES,** *et al.*, <br><br> Defendants. | Case No. 1:21-cv-00354 (TNM) |

### MEMORANDUM OPINION

Proceeding *pro se*, Stephen Durr challenges his 1994 discharge from the U.S. Army. This is Durr's third attempt in various courts to obtain monetary and injunctive relief as to his discharge. Both of his previous complaints were dismissed. This Complaint resembles those unsuccessful challenges and will also be dismissed.

### I.

Much of the factual background for this case has been ably recited in Judge Jackson's opinion dismissing Durr's last failed complaint. *See Durr v. Dep't of Army*, No. 19-cv-1340, 2020 WL 491460 (D.D.C. Jan. 30, 2020). The Court incorporates that opinion by reference here.

In short, the Army discharged Durr from active duty in 1993 after he was diagnosed with schizophrenia. *See* Second Amended Complaint (SAC) ¶ 2, ECF No. 10. As a result of that diagnosis, the Army placed Durr on the Temporary Disability Retired List (TDRL), *see id.*, which allows disabled soldiers to remain in the Army and to collect retired pay, *see Durr*, 2020 WL 491460, at *1. But in 1994, the Army's Physical Evaluation Board (PEB) determined that Durr's condition had not improved to make him fit for active duty nor was his disability severe enough to keep him on the TDRL. *See* SAC ¶¶ 3–4. At the time, Durr agreed with the PEB's

findings, *see Durr*, 2020 WL 491460, at *1; SAC ¶ 9, and the Army discharged him in 1994 from all military service, *see* SAC ¶ 5.

Years later, Durr changed his mind. He twice filed claims with the Army Board for the Correction of Military Records (ABCMR), asking to be reinstated based on new medical information that the PEB had not previously considered. *See Durr*, 2020 WL 491460, at *2. The ABCMR denied his claims, most recently in 2014. *See id.* Durr appealed that decision to the Court of Federal Claims, which held that Durr had not filed his claim within the applicable six-year statute of limitations. *See* Court of Federal Claims' Order of Dismissal ("Ct. Fed. Cl. Order"), Defs.' Motion to Dismiss Ex. 2 at 4, ECF No. 14-3.[1]

From there, Durr filed a complaint in this district. He sought judicial review under the Administrative Procedures Act (APA) of the ABCMR's decision and asked for $25 million in damages. *See Durr*, 2020 WL 491460, at *2. When the Government moved to dismiss Durr's complaint on jurisdictional grounds, he argued that he was entitled to mandamus relief under 28 U.S.C. § 1361. *See id.* at *3. Judge Jackson noted that Durr's complaint requested money damages above $10,000. *See id.* at *4. Thus, according to the Tucker Act, 28 U.S.C. § 1491(a), jurisdiction over Durr's complaint lay exclusively with the Court of Federal Claims. *See id.* Judge Jackson also concluded that Durr had not shown a "clear and indisputable right" to mandamus relief because no law required the Army to perform the requested actions and Durr had failed in all other efforts to correct his military records. *See id.* at *5. The court accordingly dismissed Durr's complaint. *See id.* The D.C. Circuit summarily affirmed. *See Durr v. Dep't of the Army*, 828 F. App'x 723 (D.C. Cir. 2020) (per curiam).

---

[1] All page citations refer to the pagination generated by the Court's CM/ECF system and all exhibit numbers refer to the numbered attachments to the CM/ECF filings.

During Durr's suit before Judge Jackson, the ABCMR released another decision denying his request to correct his records and to receive backpay. *See* Compl. Ex. 1, Part 3 at 37–43, ECF No. 4. Durr now seeks judicial review of that most recent decision. *See* SAC ¶ 22. Like the earlier complaint before Judge Jackson, his Complaint here asks for, among other things, retroactive reinstatement to military service, promotion to the rank of colonel, and attendance at advanced military training. *See id.* ¶ 23. He also requests compensatory and monetary damages of over $400 million. *See id.* ¶¶ 23–24, 33–34.

Durr's Complaint differs from his previous complaint in that he asserts new bases for this Court's jurisdiction. Durr ignores the APA, instead arguing that the Court has jurisdiction under various provisions of Title 10 of the U.S. Code, *see id.* ¶¶ 23, 35, a so-called "Federal Joint and Several Liability Doctrine," *see id.* ¶ 28, and 28 U.S.C. § 1331, *see id.* at 1. The Government moves to dismiss the Complaint. *See* ECF No. 14. That motion is now ripe.

## II.

The Government moves to dismiss Durr's Complaint on various grounds, including under Rule 12(b)(1) for lack of subject matter jurisdiction. The Government argues that Durr has not shown, despite Judge Jackson's dismissal of his earlier complaint, why this Court and not the Court of Federal Claims has jurisdiction over the current Complaint.

Durr bears the burden of establishing the Court's jurisdiction over his claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When deciding a Rule 12(b)(1) motion, the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). But the Court is "not required . . . to accept inferences unsupported by the facts or legal

conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). In deciding this motion, the Court "may consider materials outside the pleadings." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Durr proceeds without counsel. This triggers special solicitation for him. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). More, the Court must assess a *pro se* complaint "in light of all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). But *pro se* plaintiffs must still "plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009). The Court thus does not accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Yellen v. U.S. Bank, Nat'l Ass'n*, 301 F. Supp. 3d 43, 47 (D.D.C. 2018).

### III.

The Government argues that the Tucker Act, 28 U.S.C. § 1491, vests exclusive jurisdiction over Durr's Complaint in the Court of Federal Claims. Absent a waiver of sovereign immunity, any civil claim against the United States for monetary damages will be subject to the Tucker Act if, "in whole or in part, it explicitly or in essence seeks more than $10,000," *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006), and is "founded either upon the Constitution, or any Act of Congress," 28 U.S.C. § 1491(a)(2). Durr explicitly requests compensatory and punitive damages of over $400 million, well above the monetary threshold for the Tucker Act to apply. *See Palacios v. Spencer*, 906 F.3d 124, 126–27 (D.C. Cir. 2018). True, Durr also seeks

various forms of non-monetary relief. But given his explicit request for monetary relief over $10,000, the Court need not evaluate whether the "essence" of his Complaint is monetary or not in nature. *Schwalier v. Hagel*, 734 F.3d 1218, 1221 (D.C. Cir. 2013). His Complaint therefore belongs not in this Court, but in the Court of Federal Claims, just as Judge Jackson and the D.C. Circuit have already held. *See Durr*, 828 F. App'x at 723; *Durr*, 2020 WL 491460, at *5.

Durr's alternative bases for jurisdiction do not save his Complaint. He argues that various provisions in 10 U.S.C. § 1552 entitle him to relief. *See* SAC ¶ 23. That statutory section governs the correction of military records and authorizes the creation of boards for that purpose. *See* 10 U.S.C. § 1552(i). Contrary to Durr's allegations, that section provides no independent judicial review of the decisions by a board to correct military records. Any review would thus occur under the APA, *see Coburn v. McHugh*, 679 F.3d 924 (D.C. Cir. 2012), a jurisdictional basis already denied to Durr by Judge Jackson's decision.[2] *See Durr*, 2020 WL 491460, at *4. And even if § 1552 does allow judicial review of board decisions, it is an "Act of Congress" providing Durr with "a substantive right to compensation." *Van Drasek v. Lehman*, 762 F.2d 1065, 1071 (D.C. Cir. 1985). A claim under that statute for more than $10,000 in damages thus would depend on the Tucker Act. *See id.*

Durr also invokes 10 U.S.C. § 1558(f)(1). That provision allows judicial review of decisions by a "selection board" only when that board's recommendation has first been considered by a "special board." The statutory definition of "selection board" explicitly

---

[2] Indeed, two courts of competent jurisdiction have already found against Durr on his claims that the ABCMR erred and on his requests for monetary and injunctive relief. (Three if one counts the D.C. Circuit's summary affirmance of Judge Jackson's decision.) Many issues brought by Durr here have thus already been "actually and necessarily determined," meaning res judicata would likely bar Durr's claims. *See I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983).

excludes, however, "a board for the correction of military records convened under section 1552." 10 U.S.C. § 1558(b)(2)(iv). The ABCMR is such a board. *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1399 (D.C. Cir. 1995) (noting that ABCMR "derives its authority from" section 1552). Thus, the ABCMR is not a "selection board" subject to 10 U.S.C. § 1558(f)(1), and that provision does not govern judicial review of its decisions. Nor is the ABCMR a "special board" for purposes of this case. *See* 10 U.S.C. § 1558(b)(1) (noting that a board for correction of military records can be a "special board" when designated as such by the Secretary). According to Durr's own documents, the ABCMR is a "special board" only for decisions on noncommissioned officers selected for involuntary separation under the Army's Qualitative Management Program. *See* Attachment to Plaintiff's Reply at 19, ECF No. 17-1. Durr has not alleged that he falls under that program and has therefore failed on multiple levels to show that § 1558(f) applies to his case.

Durr's other alleged bases of jurisdiction are similarly unavailing. The "Federal Joint and Several Liability Doctrine" is a tort doctrine, not an independent grant of jurisdiction to federal courts. And 28 U.S.C. § 1331 only confers jurisdiction to adjudicate those causes of action "arising from other sources" in the law. *Montana-Dakota Util. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951). Durr then must do more than invoke § 1331, he also must assert "an independent cause of action under which to proceed." *Marciano v. Shulman*, 795 F. Supp. 2d 35, 38 (D.D.C. 2011) (quoting *Citizens for Resp. and Ethics in Wash. v. Cheney*, 593 F. Supp. 2d 194, 212 (D.D.C. 2009)). As already discussed, Durr fails to do so.

Finally, the Court declines to transfer Durr's Complaint to the Court of Federal Claims. Durr admittedly does not request a transfer, but the Court may transfer a case to cure a jurisdictional defect if the transfer "is in the interest of justice." 28 U.S.C. § 1631. Justice would

6

not be served by such a transfer here. The Court of Federal Claims has already ruled that Durr's claims are barred by an applicable statute of limitations. *See* Ct. Fed. Cl. Order at 4. The court also said that Durr's appeals of the ABCMR's decision "are of no consequence" to that limitations term. *Id.* This Complaint hinges on one of those appeals, meaning that a transfer would not change the Court of Claims' decision. Durr's claims would still be barred.

## IV.

For these reasons, the Government's Motion to Dismiss will be granted. That dismissal will be with prejudice. The Court may dismiss a complaint with prejudice when a plaintiff has repeatedly failed to cure the complaint's deficiencies. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Durr's Complaint mirrors closely the one already rejected by Judge Jackson. He asks for similar injunctive relief and for more in monetary damages even though Judge Jackson and the D.C. Circuit have concluded that his claims do not belong in this Court. More, Durr's various motions to amend his Complaint have added only requests for more relief, including for more money, despite those earlier decisions. *See* ECF No 21-1 at 1–2. Durr thus has failed to cure his Complaint's deficiencies, and that Complaint will therefore be dismissed with prejudice. Based on that denial, Durr's pending motion for summary judgment, *see* ECF No. 27, will be denied as moot. A separate Order will issue.

Dated: November 5, 2021                                             TREVOR N. McFADDEN, U.S.D.J.